OAO91 (Rev. 12/03) Criminal Complaint

**FILED**

APR 2 3 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA
V.
FRANCISCO RAMIREZ-VASQUEZ and JOSE JESUS MADRIGAL-DIAZ (aka Santiago Torres-Peralez)

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

Case Number:

EMC

3 07 70242

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about __April 20, 2007__ in __Sonoma__ County, in the __Northern__ District of __California__ defendant(s) did,

(Track Statutory Language of Offense)
transport aliens (8 counts), and illegally re-enter after deportation (Madrigal-Diaz, aka Torres-Peralez only),

in violation of Title __8__ United States Code, Section(s) __1324(a)(1)(A)(ii) and 1326__.

I further state that I am a(n) __Special Agent -- ICE__ and that this complaint is based on the following facts:

See attached Affidavit.

Approved as to form.
[signature]

Continued on the attached sheet and made a part of this complaint: ☒ Yes ☐ No

[signature]
Signature of Complainant

Special Agent Brian L. Ginn
Printed Name of Complainant

Sworn to before me and signed in my presence,

4/23/2007                                      at    San Francisco          California
Date                                                  City                  State

The Hon. Edward M. Chen      U.S. Magistrate Judge              [signature]
Name of Judge                Title of Judge                     Signature of Judge

## AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANTS

I, Brian L. Ginn, declare the following:

### I. INTRODUCTION AND BACKGROUND

1. I am a Special Agent with the United States Immigration and Customs Enforcement (ICE) within the United States Department of Homeland Security, formerly known as the Immigration and Naturalization Service. I have been employed in that capacity since August 2004. I am currently assigned to the ICE Human Smuggling/Benefit Fraud Group, San Francisco Office. Before joining ICE, I was employed as a United States Border Patrol Agent within the United States Department of Homeland Security. I was employed in that capacity from June 2001 to July 2004.

2. On the evening of Friday, April 20, 2007, Sonoma County law enforcement found Francisco RAMIREZ-VASQUEZ and Jose Jesus MADRIGAL-DIAZ (aka Santiago TORRES-PERALEZ) in a van in which they were transporting eight (8) undocumented aliens. I therefore make this affidavit in support of a complaint against and arrest warrants for RAMIREZ-VASQUEZ and MADRIGAL-DIAZ (aka TORRES-PERALEZ), charging them with eight (8) counts of transportation of an alien, in violation of 8 U.S.C. §1324(a)(1)(A)(ii).

3. Title 8, United States Code, Section 1324(a)(1)(A)(ii) provides as follows:

Any person who -- knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law, shall be punished as provided in subparagraph (B).

Section 1324(a)(1)(B)(i), in turn, provides that an individual who violates 1324(a)(1)(A)(ii) for the purpose of commercial advantage or private financial gain shall be fined under Title 18, United States Code, imprisoned not more than 10 years, or both.

4. Additionally, I make this affidavit in support of a complaint against and arrest warrant for MADRIGAL-DIAZ (aka TORRES-PERALEZ) for one count of illegal re-entry after deportation, in violation of 8 U.S.C. § 1326. Title 8, United States Code, Section 1326 provides that it is unlawful for an alien who has previously been deported to be found in the United States without having obtained permission to re-enter from the Attorney General of the United States or the U.S. Secretary of Homeland Security.

5. As an ICE Special Agent, I have investigated several smuggling cases involving undocumented aliens smuggled into the United States across the U.S./Mexico border. In conducting these investigations, I have: (1) written hundreds of reports of investigation; (2) participated in surveillance operations; (3) interviewed witnesses and informants; (4) served and participated in the execution of search and arrest warrants; (5) monitored electronically intercepted telephone calls; and (6) obtained and analyzed telephone and financial records. As a

1

United States Border Patrol Agent, I conducted investigations into the smuggling of undocumented aliens across the U.S./Mexico border. In conducting those investigations, I: (1) performed traffic stops; (2) conducted checkpoint inspections; (3) wrote reports of investigation; and (4) interviewed undocumented aliens smuggled into the United States across the U.S./Mexico border.

6. The information contained in this affidavit is known to me through personal knowledge and information received from other law enforcement personnel. This affidavit is based upon my training and experience as an ICE agent and that of other ICE agents and law enforcement personnel with whom I have discussed this matter.

7. As this affidavit is being submitted for the limited purpose of supporting a criminal complaint and obtaining arrest warrants, I have not included each and every fact known to me concerning this investigation. I have instead set forth facts that I believe are sufficient to establish probable cause for the Court to authorize a complaint and arrest warrants against RAMIREZ-VASQUEZ and MADRIGAL-DIAZ (aka TORRES-PERALEZ).

## II. FACTS ESTABLISHING PROBABLE CAUSE

8. On April 20, 2007, Sonoma County Sheriff's Department Deputies conducting patrol in Santa Rosa, California, conducted an enforcement stop on a white Chevrolet van bearing Arizona License Plate 446XTW.[1] According to Sonoma County Sheriff's Department records, the deputies effected the stop because the van had a broken rear brake light, in violation of California Vehicle Code Section 24603(a). In making the stop, the deputies approached the van and noted eight (8) Hispanic males, later discovered to be seven (7) adults and one (1) minor, seated or lying down in the back of the van. The deputies further noted that there were only two seats in the van (driver and front passenger), and no seats in the rear portion of the vehicle.

9. RAMIREZ-VASQUEZ was determined to be the driver of the van at the time of the enforcement stop. RAMIREZ-VASQUEZ was arrested by the Sonoma County Sherriff's Department deputies for driving without a valid license, in violation of California Vehicle Code Section 12500(a). At the time of his arrest, it was discovered that RAMIREZ-VASQUEZ had $1693.95 in U.S. Currency in his pockets.[2]

10. In addition to the eight (8) Hispanic males discovered seated or lying down in the back of the van at the time of the enforcement stop, an additional Hispanic male was discovered seated directly behind RAMIREZ-VASQUEZ on the floorboard. However, prior to making the stop, one of the deputies noticed a front seat passenger next to the driver. The Hispanic male on the floorboard presented a Mexican ID card bearing the name of Santiago TORRES-PERALEZ to the deputies conducting the enforcement stop.

---

[1] The van is registered to an individual living on N. 83rd Avenue in Phoenix, AZ, 85037. Because this affidavit will be a public record, this individual's name and address are not disclosed herein.

[2] The Sheriff's Department report indicates this was the amount found on RAMIREZ-VASQUEZ; however, the amount of currency turned over to ICE as being found on RAMIREZ-VASQUEZ was actually $1663.95.

11. The Sonoma County Sheriff's deputies contacted ICE Special Agent (SA) Dwayne Cook. SA Cook conducted records checks that determined, pending a fingerprints analysis, that TORRES-PERALEZ was possibly an alias for Jose Jesus MADRIGAL-DIAZ, a Mexican national with multiple previous deportations and exclusions from the United States under A-file #AXXXX7528.

12. The Sonoma County Sheriff's deputies noted that, excluding driver RAMIREZ-VASQUEZ (who presented a Lawful Permanent Resident Card (I-551)), none of the other individuals found in the van had a residency card or any other U.S. documentation/identification. One of the Hispanic males in the back of the van told one of the deputies that they had just arrived in Santa Rosa after having walked across the U.S./Mexico border the previous Sunday.

13. SA Cook asked the Sonoma County Sheriff's deputies to detain all individuals found in the van for further investigation of violations of, *e.g.*, 8 U.S.C. § 1324. During the course of the detention, the deputies conducted a search of TORRES-PERALEZ and discovered that he was in possession of $2891.85 in U.S. Currency.[3]

14. RAMIREZ-VASQUEZ, TORRES-PERALEZ, and the seven (7) adult Hispanic males found in the van were transported to the Sonoma County Jail by the Sonoma County Sherriff's Department.[4] RAMIREZ-VASQUEZ was booked into the jail based upon his arrest for driving without a valid license. TORRES-PERALEZ and the seven (7) adult Hispanic males were booked into the jail pursuant to immigration detainers submitted by SA Cook.

15. At the Sonoma County Jail, SA Cook and I interviewed CS-1, one of the adult Hispanic men found in the van. CS-1 told me that he and the other Hispanic males found in the van had left Oaxaca, Mexico together on what he believed was April 10, 2007. CS-1 said that the men traveled to Sonora, Mexico, where they met a smuggler, name unknown. CS-1 explained that the men made arrangements with the smuggler to bring them to Santa Rosa, California for $1400.00 U.S. Currency each. CS-1 indicated that the smuggler from Sonora walked them across the U.S./Mexico border illegally. CS-1 indicated that after walking across the border, the smuggler and the men walked to a major highway where they were picked up by a vehicle. CS-1 indicated that the smuggler and the men were then driven to a house in Phoenix, Arizona. CS-1 indicated that the men were picked up from the house in Phoenix by two (2) men. CS-1 identified RAMIREZ-VASQUEZ as the driver of the van who picked them up in Phoenix. CS-1 identified TORRES-PERALEZ as the other man who had picked the men up from Phoenix.[5]

---

[3] The amount of currency turned over to ICE as being found on TORRES-PERALEZ was actually $2891.89.

[4] The minor Hispanic male, who will be fifteen years old in August of this year, was transported to a Juvenile Hall, where he is being held pursuant to an immigration detainer placed by SA Cook.

[5] CS-1's identifications of RAMIREZ-VASQUEZ and TORRES-PERALEZ as the two men who picked the men up in Phoenix, and all other identifications set forth in this affidavit, were made from digital photographs of RAMIREZ-VASQUEZ and TORRES-PERALEZ taken at the Sonoma County Jail.

16. CS-1 stated that the men were going to pay their smuggling fees to RAMIREZ-VASQUEZ and TORRES-PERALEZ once they got to Santa Rosa, California. Specifically, CS-1 advised that friends of the men were going to pay RAMIREZ-VASQUEZ and TORRES-PERALEZ upon their arrival in Santa Rosa. CS-1 indicated that this was the arrangement that the men had made with the smuggler in Sonora, Mexico.

17. CS-1 stated that as the van was being pulled over by the police in Santa Rosa, California, the driver (RAMIREZ-VASQUEZ), told the men to lie down in the back of the van.

18. At the Sonoma County Jail, SA Cook and I interviewed CS-2, one of the other adult Hispanic males found in the van. CS-2 indicated that he was from Oaxaca, Mexico. CS-2 stated that he and the other men had met a smuggler in Sonora, Mexico with whom they made arrangements to be brought from Sonora, Mexico to Santa Rosa, CA for $1400.00 U.S. Currency each. CS-2 stated that the smuggler and the men illegally entered the United States by walking across the U.S./Mexico border. After crossing the border, the smuggler and the men walked to a highway where they were picked up and driven to a house that CS-2 believes was in Arizona. CS-2 indicated that the smuggler left the men at the house. CS-2 indicated that the men were picked up from the house by "the guy driving the van and other guy." CS-2 identified RAMIREZ-VASQUEZ as the driver and TORRES-PERALEZ as "the other guy" with RAMIREZ-VASQUEZ when the men were picked up from the house in Arizona.

19. CS-2 indicated that his brother-in-law was going to pay RAMIREZ-VASQUEZ and TORRES-PERALEZ for his and his son's smuggling fees when they arrived in Santa Rosa.[6] CS-2 indicated that this was the arrangement made with the smuggler in Sonora, Mexico. CS-2 stated that he had spoken with RAMIREZ-VASQUEZ about the smuggling fee. CS-2 indicated that he had told RAMIREZ-VASQUEZ that he was going to pay RAMIREZ-VASQUEZ the $1400.00 each for him and his son when they got to Santa Rosa because that was the arrangement they had made with the smuggler in Sonora. CS-2 stated that RAMIREZ-VASQUEZ replied, "OK."

20. CS-2 stated that the men had told RAMIREZ-VASQUEZ and TORRES-PERALEZ that they were from Oaxaca, and had recounted for them how they had crossed the border into the United States.[7]

21. In addition to CS-1 and CS-2, SA Cook and I conducted interviews with the other five (5) adult Hispanic males found in the van. All five (5) of the men identified RAMIREZ-

---

[6] CS-2 is the father of the minor Hispanic male found in the van.

[7] During the interview with CS-1, CS-1 advised that he did not know if RAMIREZ-VASQUEZ and TORRES-PERALEZ knew the men were from Mexico. In another possible inconsistency, CS-1 indicated that after being brought to the house in Arizona, the men waited for two (2) to four (4) hours before being picked up by RAMIREZ-VASQUEZ and TORRES-PERALEZ, and leaving for Santa Rosa the day before they were apprehended (April 19, 2007.) On the other hand, CS-2 indicated that the men spent one night at the house in Arizona and left two days prior to their apprehension (April 18, 2007.)

4

VASQUEZ and TORRES-PERALEZ as the men who had picked them up in Arizona. All five (5) of the males stated that they were planning on having their smuggling fees paid by friends or family upon reaching Santa Rosa, and that this was the arrangement made with the smuggler whom they had met in Sonora, Mexico.

22. TORRES-PERALEZ waived his constitutional rights per *Miranda* and consented to being interviewed by myself and ICE SA Jeffrey Rea. TORRES-PERALEZ stated that he was a Mexican national who had crossed the U.S./Mexico border illegally three (3) months ago. TORRES-PERALEZ claimed that he had never been deported from the United States. TORRES-PERALEZ further stated that he had been picked up by the van in Portersville, California, and that there were already five (5) other Hispanic males in the vehicle at that time. TORRES-PERALEZ claimed that he was en route to Santa Rosa, California seeking work.

23. At the Sonoma County Jail, TORRES-PERALEZ's fingerprints were taken and submitted electronically through the California Department of Justice (DOJ) Live Scan system.[8] A Live Scan Transaction Agency Notification report generated by the submission of TORRES-PERALEZ's fingerprints confirmed that he was Jose Jesus MADRIGAL-DIAZ with FBI # XXXX37VA3.[9] A Criminal History Check conducted with FBI#XXXX37VA3 also confirmed that MADRIGAL-DIAZ (aka TORRES-PERALEZ) had A-file #AXXXX7528.

24. A search of the Deportable Alien Control System (DACS) conducted by the Law Enforcement Support Center on April 21, 2007 revealed that, under A-file #AXXXX7528, MADRIGAL-DIAZ had previously been excluded from the United States to Mexico four times, and had previously been deported from the United States to Mexico two times. His most recent deportation was on August 29, 2003, at San Ysidro, CA.[10]

25. Based on the foregoing, I submit that there is probable cause to believe that Francisco RAMIREZ-VASQUEZ and Jose Jesus MADRIGAL-DIAZ (aka Santiago TORRES-PERALEZ) committed eight (8) counts of alien transportation, in violation of 8 U.S.C. §1324(a)(1)(A)(ii). Additionally, based on the foregoing, I submit that there is probable cause to believe that Jose Jesus MADRIGAL-DIAZ (aka Santiago TORRES-PERALEZ) committed one count of illegal re-entry after deportation, in violation of 8 U.S.C. § 1326. I therefore request that the Court approve this complaint and issue arrest warrants for Francisco RAMIREZ-VASQUEZ and Jose Jesus MADRIGAL-DIAZ aka Santiago TORRES-PERALEZ.

26. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed this 23rd day of April, 2007, at San Francisco, California.

---

[8] The California DOJ Live Scan system provides for the electronic submission of fingerprints for FBI and state criminal history checks.
[9] One of the aliases listed under FBI#XXXX3VA3 is PARALEZ, Santiago Torres.
[10] The Law Enforcement Support Center (LESC) provides support to ICE Agents and other law enforcement agencies by, among other things, conducting checks of pertinent immigration databases, including DACS.

Brian L. Ginn, Special Agent
Immigration and Customs Enforcement
U.S. Department of Homeland Security

Subscribed and sworn to before me this  23rd  day of  April  , 2007.

_____
The Hon. Edward M. Chen
United States Magistrate Judge
Northern District of California

6