SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney

BRIAN STRETCH (CABN 163973)
Chief, Criminal Division

DENISE MARIE BARTON (MABN 634052)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-7359
    Facsimile: (415) 436-7234
    E-mail: denise.barton@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07-0309 WHA |
| Plaintiff, | UNITED STATES' MOTIONS *IN LIMINE* TO: |
| v. | (A) ADMIT DEFENDANT'S PRIOR STATEMENTS TO IMMIGRATION OFFICIALS; |
| | (B) ADMIT ILLEGAL ENTRY CONVICTIONS AS PROOF OF ALIENAGE; |
| JOSE JESUS MADRIGAL-DIAZ, | (C) ADMIT PRIOR CONVICTIONS FOR IMPEACHMENT PURPOSES; |
| Defendant. | (D) ADMIT A-FILE DOCUMENTS AS SELF-AUTHENTICATING PUBLIC RECORDS; |
| | (E) ADMIT THE CERTIFICATE OF NON-EXISTENCE AS THE ABSENCE OF A PUBLIC RECORD; |
| | (F) ADMIT EXPERT TESTIMONY FROM A FINGERPRINT EXAMINER; |
| | (G) PROHIBIT COLLATERAL ATTACK ON PRIOR REMOVALS AND DEPORTATIONS; |
| | (H) PROHIBIT REFERENCE TO DEFENDANT'S BACKGROUND AND PRIOR RESIDENCY; |
| | (I) PROHIBIT REFERENCE TO THE REASON DEFENDANT REENTERED OR WAS IN THE UNITED STATES; AND |
| | (J) PROHIBIT REFERENCE TO POTENTIAL PENALTY. |
| | Trial Date: October 1, 2007<br>Time: 7:30 a.m. |

UNITED STATES' MOTIONS IN LIMINE, CR 07-0309 WHA

1     Plaintiff, the UNITED STATES OF AMERICA, hereby files its Motions in Limine.

2  **I.    STATEMENT OF THE FACTS**

3     On April 20, 2007, while effecting a traffic stop in Santa Rosa, California, Sonoma County Sheriff's Department Deputies approached a white cargo van with Arizona plates. The Deputies observed the defendant and another Hispanic male seated in the front of the van and eight Hispanic males, later determined to seven Mexican adult male illegal aliens and one Mexican juvenile male illegal alien, seated or lying down on the floorboards in the back cargo area of the van. Sonoma County Sheriff's Department contacted Immigration and Customs Enforcement agents, who then became involved in the investigation. During the stop, the defendant, who was seated in the front passenger seat, gave the deputies a false name and claimed to have never been deported from the United States. After his true identity was confirmed through fingerprints, Immigration and Customs Enforcement agents determined that the defendant had been deported or removed from the United States seven times, beginning in 1997 and most recently, in August 2003. The defendant, the driver of the van, and all the passengers of the van were detained by Immigration and Customs Enforcement agents.

**II.    PROCEDURAL HISTORY**

On April 23, 2007, the defendant was charged by Complaint with Transportation of Aliens in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and Illegal Reentry After Deportation in violation of Title 8, United States Code, Section 1326. On May 17, 2007, a federal grand jury returned a Indictment charging defendant with Illegal Reentry by an Alien After Deportation, in violation of Title 8, United States Code, Section 1326. The defendant was arraigned on the Indictment and pled not guilty on May 24, 2007.[1]

---

[1] The United States chose not to proceed against the defendant for a violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

**III.    UNITED STATES' MOTIONS IN LIMINE**

A.    The Court Should Admit Defendant's Prior Statements

During several of his encounters with the Immigration and Customs Enforcement Agency and previously, the Immigration and Naturalization Service, through an interpreter, the defendant gave voluntary sworn statements attesting to his identity; citizenship; prior deportations; and lack of permission to reenter the United States. The United States intends to offer these statements at trial as admissions of a party-opponent. Fed. R. Evid. 801(d)(2)(A). Specifically, the United States intends to introduce the following statements of the defendant:

-- On November 12, 1997, the defendant signed a *Request for Prompt Removal* in which he stated that he was not a citizen of the United States and was a native and citizen of Mexico. In signing this document, the defendant also acknowledged that his request was voluntary and that he had not been coerced.

-- On December 19, 1997, the defendant signed a *Record of Sworn Statement in Affidavit Form* in which he stated that he made the statement freely and voluntary; that his correct name was Jose Jesus Madrigal-Diaz; that he was a native and citizen of Mexico; that he had previously been deported on or about December 3, 1997; and that he had not applied for permission to reenter the United States.

-- On June 30, 1999, the defendant signed a *Record of Sworn Statement*. As part of this statement, he acknowledged his rights, including the rights to remain silent and that anything he said could be used against him. He then stated that his correct name was Jose Jesus Madrigal-Diaz; that he was a native and citizen of Mexico; that he had previously been deported in February 1998; and that he had not applied for permission to reenter the United States.

-- On September 14, 1999, the defendant signed a *Record of Sworn Statement in Affidavit Form* in which he stated that he made the statement freely and voluntary; that his correct name was Jose Jesus Madrigal-Diaz; that he was a native and citizen of Mexico; that he had previously been deported in February 1998; and that he had not applied for permission to reenter the United States.

-- On December 23, 1999, the defendant signed a *Record of Sworn Statement in Affidavit Form* in which he stated that he made the statement freely and voluntary; that his correct name was Jose Jesus Madrigal-Diaz; that he was a native and citizen of Mexico; that he had previously been deported in December 1997; and that he had not applied for permission to reenter the United States.

-- On February 27, 2001, the defendant signed a *Record of Sworn Statement*. As part of this statement, he acknowledged his rights, including the rights to remain silent and that anything he said could be used against him. He then stated that his correct name was Jose Jesus Madrigal-Diaz; that he was a native and citizen of Mexico; that he had previously been deported in 1996; and that he had not applied for permission to reenter the United States.

-- On August 8, 2001, the defendant signed a *Record of Sworn Statement*. As part of this statement, he acknowledged his rights, including the rights to remain silent and that anything

3

      he said could be used against him. He then stated that his correct name was Jose Jesus Madrigal-Diaz; that he was a native and citizen of Mexico; that he had previously been deported in February 1998; and that he had not applied for permission to reenter the United States.

--     On August 28, 2003, the defendant signed a *Record of Sworn Statement*. As part of this statement, he acknowledged his rights, including the rights to remain silent and that anything he said could be used against him. He then stated that his correct name was Jose Jesus Madrigal-Diaz; that he was a native and citizen of Mexico; that he had previously been deported on or about February 28, 2001; and that he had not applied for permission to reenter the United States.

The defendant's statements are admissible to corroborate alienage, his deportations, and illegal reentry. See United States v. Galindo-Gallegos, 244 F.3d 728, 732, amended at 255 F.3d 1154 (9th Cir. 2001) ("A defendant's admission that he is an alien, together with a deportation order, suffice to establish alienage"); Fed. R. Evid. 801(d)(2)(A) (admission by a party opponent). To the extent that these statements contain extraneous and irrelevant material relating to the defendant's reasons for reentry or family circumstances, the United States intends to redact any such statements for the reasons set forth below. See infra Sections III.H. and III.I. Accordingly, this Court should permit the United States to offer defendant's voluntary statements to immigration officials as statements of a party-opponent.

B.     <u>The Court Should Admit the Defendant's Illegal Entry Convictions as Proof of Alienage</u>

      The defendant's prior convictions for Illegal Entry should be admitted as proof of alienage. Fed. R. Evid. 803(22) (evidence of a final judgement, entered after a trial or plea of guilty, is admissible to prove any fact essential to sustain the judgment). In Bejar-Matrecious, the Ninth Circuit held that because alienage is an element of a conviction under either Title 8, United States Code, section 1325 or 1326, evidence of a prior conviction under either section can be used to establish alienage in a Illegal Reentry case. United States v. Bejar-Matrecious, 618 F.2d 81, 84 (9th Cir. 1980) ("evidence of a prior conviction, even though founded on a plea of guilty, may be relevant in a subsequent criminal proceedings to establish material facts necessary to sustain the prior judgement"). But see United States v. Arnett, 353 F.3d 765 (9th Cir. 2004) (the prior conviction is admissible of proof of alienage but cannot be used to conclusively establish the alienage). The defendant has one misdemeanor and two felony convictions for Illegal Entry in violation of Title 8,

United States Code, section 1325. On December 19, 1997, the defendant was convicted of Illegal Entry in the District of Arizona and sentenced to 60 days in jail. On September 15, 1999, the defendant was again convicted of Illegal Entry in the Southern District of California and sentenced to 90 days in jail. Thereafter, on December 24, 1999, the defendant was convicted of Illegal Entry in the District of Arizona and was sentenced to 4 months in jail. Accordingly, the United States should be permitted to use the defendant's prior section 1325 convictions as proof of alienage in addition to the other proof of alienage it intends to introduce at trial.

C.   The Court Should Admit the Defendant's Prior Convictions as FRE 609 Evidence

If the defendant chooses to testify at trial, the United States should be allowed to demonstrate defendant's lack of trustworthiness by utilizing his prior felony convictions and misdemeanor crime of dishonesty for impeachment purposes. Federal Rule of Evidence 609(a)(1) provides that felony convictions "shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial value to the accused." United States v. Martinez-Martinez, 369 F.3d 1076, 1088 (9th Cir. 2004) (admitting a conviction for possession of marijuana for sale for impeachment purposes in an Illegal Reentry trial). The Ninth Circuit has set forth a five-factor test for balancing the relative probativeness and unfair prejudice of a prior conviction. Under this five-factor test, this court should consider: (1) the impeachment value of the prior crime; (2) the temporal relationship between the conviction and the defendant's subsequent criminal history; (3) the similarity between the past and the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of the credibility issue. United States v. Cook, 608 F.2d 1175, 1185 n.8 (9th Cir. 1979).

In additional to his two federal felony convictions for Illegal Entry, see infra Section III.B., the defendant has four felony convictions in the State of California, all of which occurred within ten years of the instant offense. On February 2, 2001, the defendant was convicted of Felony Possession of a Controlled Substance in Fresno Superior Court. On January 14, 2002, the defendant was convicted in Fresno Superior Court of two felony counts – Taking a Vehicle Without Consent and Receiving Stolen Property . On November 12, 2002, the defendant was convicted in Tulare Superior

1  Court of Felony Assault with a Firearm. If defendant chooses to testify, his credibility will be a
2  central issue in the case and defendant's character for honesty is a factor that should be carefully
3  weighed by the Court. The importance of defendant's testimony is crucial in a case such as this,
4  where defendant would presumably be called to testify only if he intended to claim that (1) he was
5  involuntarily brought to this country, (2) he did not have a conscious desire to enter the United
6  States, (3) he was never actually deported, (4) he was not an illegal alien, or (5) he had received the
7  permission to re-enter the United States, even though the Department of Homeland Security has no
8  record of such permission being granted.

9  With respect to misdemeanor convictions, Rule 609(a)(2) provides that "evidence that any
10 witness is convicted of a crime shall be admitted if it involved dishonesty or false statement,
11 regardless of the punishment." Although general felony crimes admitted pursuant to Federal Rule of
12 Evidence Rule 609(a)(1) may be excluded under Rule 403, the Ninth Circuit has held that crimes of
13 dishonesty or false statement admitted pursuant to Rule 609(a)(2) cannot be excluded under Rule
14 403. United States v. Leyva, 659 F.2d 118, 121 (9th Cir. 1982) (citing from the Congressional
15 Conference Report on the Rules of Evidence, the Court held that "convictions of crimes of deception
16 are always provable, regardless of penalty, unless time barred"); United States v. Brashier, 548 F.2d
17 1315, 1326-27 (9th Cir. 1976) ("[t]he admission of prior convictions involving dishonesty and false
18 statement is not within the discretion of the Court. Such convictions are peculiarly probative of
19 credibility and . . . are always to be admitted"). As for misdemeanor convictions, on May 25, 1999,
20 the defendant was convicted of Providing False Identification to a Peace Officer. Insofar as this
21 crime involves the making of a false statement, in itself an act of dishonesty, this conviction falls
22 squarely within Federal Rule of Evidence 609(a)(2) and should be admitted.

23 Accordingly, for these reasons, the United States should be allowed to introduce evidence of
24 defendant's prior felony convictions and misdemeanor conviction of dishonesty and false statement
25 under Rule 609 if defendant elects to testify at trial.

26
27
28

D.  <u>The Court Should Admit A-File Documents as Self-Authenticating Public Records</u>

The United States intends to offer documents maintained by immigration authorities, formerly the former Immigration and Nationalization Service and currently, the Department of Homeland Security to establish defendant's prior deportations. The immigration authorities maintain an "A-file" or "Alien-file" on an alien, which contains documents reflecting most of an alien's immigration encounters. The defendant's A-File contains Warrants of Deportation for the defendant from August 29, 2003, February 28, 2001, April 24, 2001, December 17, 1999, September 17, 1999, February 13, 1998, and December 3, 1997. These documents are self-authenticating "public records." Fed. R. Evid. 803(8)(B).

The Ninth Circuit has consistently held that A-File documents, such as the Warrants of Deportation that the United States seeks to offer, are admissible under Federal Rule of Evidence 803(8) and are not subject to the law enforcement exception to that rule. <u>United States v. Loyola-Dominguez</u>, 125 F.3d 1315, 1317-18 (9th Cir. 1997) (admitting warrants of deportation in an A-File as self-authenticating non-hearsay); <u>United States v. Sotelo</u>, 109 F.3d 1446, 1449 (9th Cir. 1997) (holding warrant of deportation was properly admitted to prove alienage); <u>United States v. Contreras</u>, 63 F.3d 852, 857 (9th Cir. 1995) (district court properly admitted warrant of deportation as public record); <u>United States v. Hernandez-Rojas</u>, 617 F.2d 533, 534-35 (9th Cir. 1980) (noting that the purpose behind the law enforcement exception to the public records rule did not apply to a warrant of deportation because the notation of deportation was a "ministerial , objective observation, which has inherent reliability because of the Government's need to keep records of the movement of aliens"). In <u>Loyola-Dominguez</u>, the defendant argued that the A-file documents were inadmissible because the government failed to establish a proper foundation to admit them under the FRE 803(8). The Court held that "the public records exception is one of the few hearsay exceptions that does not require a foundation. Instead, documents that fall under the public records exception are presumed trustworthy, placing the burden of establishing untrustworthiness on the opponent of the evidence." <u>Loyola-Dominquez</u>, 125 F.3d at 1318 (quotations and citations omitted).

The admission of Warrants of Deportation does not implicate the Confrontation Clause. In <u>United States v. Bahena-Cardenas</u>, the Court held:

7

> We conclude that the warrant of deportation is nontestimonial because it was not made in anticipation of litigation, and because it is simply a routine, objective, cataloging of an unambiguous factual matter. [case citations omitted] . . .
>
> In this sense, the warrant of deportation is no different than a birth certificate or any other public record which constitutes the routine cataloging of an unambiguous factual matter. Surely Crawford did not mean to require the doctor or nurse who actually filled out a birth certificate to testify as to its veracity.
>
> We hold that the warrant of deportation in this case is nontestimonial and thus admissible. Accordingly, the government provided sufficient evidence of removal.

411 F.3d 1067, 1085 (9th Cir. 2005). Consistent with this Circuit's rulings, the United States should be permitted to offer A-File documents as self-authenticating public records.

E.     The Court Should Admit the Certificate of Non-Existence As The Absence of Public Record

The United States intends to introduce a Certificate of Non-Existence of Record ("CNR"), prepared by an authorized official at the Department of Homeland Security and certifying that there are no records in any of the Department's databases, files, or archives that defendant has ever applied for, or been granted, permission to reenter the United States following his deportation. Federal Rule of Evidence 803(10) permits admission of a certification, in accordance with Federal Rule of Evidence 902, attesting to the absence of a record of a matter of which a record would be regularly made and preserved by a public office of agency.   The Ninth Circuit has held that a CNR is not "testimonial" within the meaning of Crawford v. Washington, 124 S. Ct. 1354 (2004), and therefore that its admission into evidence does not violate the Confrontation Clause of the United States Constitution. United States v. Cervantes-Flores, 421 F.3d 825, 831-33 (9th Cir. 2005). See also United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (holding that the CNR was properly admitted under Federal Rules of Evidence  803 and 902).  Accordingly, this Court should admit the CNR pursuant to Federal Rules of Evidence 803(10) and 902.

F.     The Court Should Admit Expert Testimony by a Fingerprint Examiner

The United States seeks to admit testimony of a fingerprint expert to identify defendant as the person who was previously deported from the United States on August 29, 2003, February 28, 2001, April 24, 2001, December 17, 1999, September 17, 1999, February 13, 1998, and December 3, 1997.

8

Pursuant to Federal Rule of Evidence 702, if specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. In addition, an expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704. Determining whether expert testimony would assist the trier-of-fact in understanding the facts at issue is within the sound discretion of the trial judge. See United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995) (admitting expert testimony on an area - drug conspiracies - that was outside the scope of most jurors' common knowledge); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994)(upholding expert testimony by law enforcement officers).

       Here, the fingerprint expert's testimony will assist the trier-of-fact in determining a central issue in the case - whether the defendant who was found in the Northern District of California and is currently on trial was previously deported. As set forth in the *United States' Expert Disclosure* notice, the expert witness that the United States seeks to call will testify that he reviewed and examined numerous documents bearing fingerprint impressions from Jose Jesus Madrigal Diaz, including the warrants of deportation. He will testify that his opinion was established by an analysis, comparison, and evaluation of the friction ridge detail on the items he reviewed. He will further opine that the fingerprint impressions appearing on each document he reviewed and examined were made by the same individual. The United States submits that this evidence is permissible expert testimony insofar as it is based on specialized knowledge and will assist the trier-of-fact to determine the essential questions of identity and prior deportation.

G.     The Court Should Prohibit Any Collateral Attack on Defendant's Deportations or Removals

       The lawfulness of defendant's prior deportation and removal orders is not an element of the offense in a prosecution under Title 8, United States Code, section 1326. Therefore, any question about the lawfulness of the deportation or removal should not be put before the jury for consideration. In United States v. Alvarado-Delgado, the Ninth Circuit held that the lawfulness of a prior deportation is not an element of the offense under section 1326. 98 F.3d 492, 493 (9th Cir. 1996), overruling United States v. Ibarra, 3 F.3d 1333 (9th Cir. 1993). The Alvarado-Delgado court

noted that while some jurisdictions hold that a prior deportation is an element of the offense if the deportation is "lawful," the statute itself contains no such limitation and simply states that "[a]ny alien who has been arrested and deported or excluded or deported will be guilty of a felony if the alien thereafter, enters, attempts to enter, or is at any time found in the United States." Id. Therefore, this defendant should be prohibited from introducing any evidence challenging the prior deportation and removal orders before the jury.

H.   The Court Should Prohibit Reference to Defendant's Background and Prior Residency

The defendant may attempt to introduce evidence about his family circumstances and his prior residency in the United States. This information is irrelevant to this case and should be excluded. "Evidence which is not relevant is not admissible," and the jury should "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." Fed. R. Evid. 402; Ninth Cir. Model Jury Instructions, § 3.1 (2003). Such evidence would not only be irrelevant but a blatant play for sympathy and jury nullification.

In United States v. Ibarra, the district court granted the United States' motion in limine to preclude Ibarra from introducing "evidence of his prior legal status in the United States, and the citizenship of his wife, mother and children" in a Section 1326 prosecution. The Ninth Circuit affirmed, reasoning that, because Ibarra had failed to demonstrate how the evidence could possibly affect the issue of his alienage, the district court properly excluded it as irrelevant. 3 F.3d 1333, 1334 (9th Cir. 1993), overruled on other grounds by United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996). Similarly, in United States v. Serna-Vargas, the defendant filed a motion in limine to introduce evidence of what she termed "de facto" citizenship as an affirmative defense in a Section 1326 prosecution. 917 F. Supp. 711, 711 (C.D. Cal. 1996). Specifically, she sought to introduce evidence of the involuntariness of her initial residence; her continuous residency since childhood; her fluency in the English language; and the legal residence of immediate family members. Id. at 712. The court denied the motion, noting that "none of these elements are relevant to the elements that are required for conviction under § 1326." Id. The court also noted that admission of the evidence would run "contrary to the intent of Congress," because "the factors that

[the defendant] now seeks to present to the jury are ones that she could have presented the first time she was deported." Id. Therefore, the court held, "[a]llowing her to present the defense now would run contrary to Congress' intent." Id. In particular, "under the scheme envisioned by Congress, an alien facing deportation may present evidence of positive equities only to administrative and Article III judges, and not to juries." Id. (emphasis added). Accordingly, any evidence relating to the defendant's prior residency and background, including his United States citizen children and spouse, should be precluded.

I.  The Court Should Prohibit Reference to the Reason the Defendant Reentered or Was in the United States

Defendant may attempt to offer evidence of the reason for his reentry, or alternatively, his belief that he was entitled to do so. Defendant may also attempt to offer evidence of the reason for his being in the United States, or alternatively, his belief that he was entitled to be here. The Court should preclude him from doing so. Evidence of why defendant violated Section 1326 is patently irrelevant to the question of whether he did so -- the only material issue in this case. Rule 401 defines "relevant evidence" as:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid. 401. Rule 402 states that evidence "which is not relevant is not admissible." Fed. R. Evid. 402. In United States v. Leon-Leon, this Circuit held that because Title 8, United States Code, section 1326 is not a specific intent crime, evidence as to the defendant's belief of his right to be in the country - even if reasonable - is not relevant and should not be admitted. 35 F. 3d 1428, 1432 (9th Cir. 1994) (upholding Court's decision to exclude the defendant's evidence that he was in possession of a green card to establish that he reasonably believed he had permission to reenter the United States). Here, the reason why defendant reentered the United States, his belief that he was justified in doing so, is similarly irrelevant to whether he violated Section 1326.

The case of United States v. Komisaruk is also illustrative on this point. Komisaruk was convicted of willfully damaging government property by vandalizing an Air Force computer. 885 F.2d 490, 491 (9th Cir. 1980). On appeal, she argued that the district court erred in granting the

11

government's motions in limine to preclude her from introducing her "political, religious, or moral beliefs" at trial. Id. at 492. In particular, she argued that she was entitled to introduce evidence of her anti-nuclear war views, her belief that the Air Force computer was illegal under international law, and that she was otherwise morally and legally justified in her actions. Id. at 492-93. The district court held that her "personal disagreement with national defense policies could not be used to establish a legal justification for violating federal law nor as a negative defense to the government's proof of the elements of the charged crime," and the Ninth Circuit affirmed. Id. at 492. Similarly here, the reason why defendant reentered the United States; his belief that he was entitled to do so; the reason why he was in the United States; and his belief that he was entitled to be here, are all irrelevant to any fact at issue in this case and any reference thereto should be prohibited.

J.  The Court Should Prohibit Reference to Potential Penalty

Defendant should be prohibited from making any reference to the potential penalty he may suffer if convicted of this offense. Information about penalty and punishment draws the attention of the jury away from their chief function as the sole judges of the facts, opens the door to compromise verdicts, and confuses the issues to be decided. See United States v. Olano, 62 F.3d 1180, 1202 (9th Cir. 1995); United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991). In federal court, the jury is not permitted to consider punishment in deciding whether the United States has proved its case against the defendant beyond a reasonable doubt. 9th Cir. Crim. Jury Instr. §7.4 (2003). Any such argument or reference would be an improper attempt to have the jury unduly influenced by sympathy for the

//
//
//
//
//
//
//
//

defendant and prejudice against the United States. The United States respectfully requests this Court to preclude any mention of the possible penalties at any point during the trial.

**IV.    CONCLUSION**

For the foregoing reasons, the Government respectfully requests that its motions be granted.

DATED: September 10, 2007                                Respectfully Submitted,

SCOTT N. SCHOOLS
United States Attorney

_____/s/_____
DENISE MARIE BARTON
Assistant United States Attorney