JEFFRY GLENN, SBN 47357
BERMAN, GLENN & HAIGHT
5 Third Street, The Hearst Building, Suite 1100
San Francisco, CA 94103
Telephone: (415) 495-3950
Fax: (415) 495-6900
e-mail: SFLawyers@earthlink.net

Attorneys for Defendant:
JOSE JESUS MADRIGAL-DIAZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. CR07-0309-1 WHA |
| Plaintiff, | |
| vs. | **DEFENDANT JOSE JESUS MADRIGAL-DIAZ SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD DEPARTURE** |
| **JOSE JESUS MADRIGAL-DIAZ**, | DATE: December 11, 2007 |
| Defendant. | Time: 2:00 P.M. |

INTRODUCTION

JOSE JESUS MADRIGAL-DIAZ respectfully requests a downward departure on the grounds of cultural assimilation in the American society and a downward departure on the grounds that he is prepared to stipulate to a summary deportation upon completion of his term of imprisonment.

Alternatively, Mr. Madrigal-Diaz requests the Court to sentence him to a term below the guideline range under USSC 5K2.0. (a) (1) (A)

DISCUSSION

I. MR. MADRIGAL-DIAZ SHOULD RECEIVE A DOWNWARD DEPARTURE ON THE GROUNDS OF CULTURAL ASSIMILATION IN THE AMERICAN SOCIETY

In <u>United States v. Lipman</u>, 133 F. 3d 726 (9th Cir. 1998), the court held that "cultural assimilation" is a permissible ground for departure under the Sentencing Guidelines. There, the court said because cultural assimilation was never addressed or proscribed per se as a factor for departure, the district court had authority under U.S. Sentencing Guideline Manual §5K2.0 to consider such evidence. Moreover, the factor of cultural assimilation was akin to the factor of family and community ties. Thus, the district court had authority to depart on this basis in extraordinary circumstances. <u>Id</u>. At 729.

Under U.S. Sentencing Guidelines Manual §5K2.0, family ties and responsibilities and community ties may be relevant if present to an unusual degree such that the case is distinguished from the "heartland" cases in a way that is important to the statutory purposes of sentencing." <u>U.S. Sentencing Guidelines Manual §5K2.0</u>. Whether a defendant's family and community ties

are sufficiently "unusual" or "extraordinary" to warrant departure in a particular case is a factual determination that also lies within the discretion of the district court. United States v. Lipman, 133 F. 3d 726 at 728.

In support of his request for a downward departure based on cultural assimilation in to American Society, Mr. Madrigal-Diaz contends that he is not the typical illegal reentry defendant because he is a "de facto American" with "significant ties" to the United States. Mr. Madrigal-Diaz came to the United States in 1985, at the age of 14. Upon arriving in the United States, he lived with his brother and at age 17 began living and working in a migrant camp and has spent most of his entire adulthood continuously working in the United States. (Exhibit 1 letters from Mr. Madrigal-Diaz, Pauline Federico, Madriga Lemus family). He has lived in the United States with his family of two daughters and their mother and worked for over 15 years and considers it a familiar culture and effectively his homeland. He speaks English very well. He reentered the United States as a result of his cultural, emotional and psychological ties to this country.

II. MR. MADRIGAL-DIAZ SHOULD RECEIVE A DOWNWARD DEPARTURE ON THE GROUNDS THAT HE IS PREPARED TO STIPULATE TO A SUMMARY DEPORTATION UPON COMPLETION OF HIS TERM OF IMPRISONMENT.

In <u>Koon v. United States</u>, 518 U.S. 81 (1996), the Supreme Court held that a court may depart downward based on a factor unmentioned in the Guidelines if, "after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," the court finds that the factor is "sufficient to take the case out of the Guideline's heartland." In <u>United States v. Rodriquez- Lopez</u>, 198 F. 3d 773, (9th Cir 1999) the Ninth Circuit applied the approach in Koon in holding the absence of governmental consent does not categorically bar a district court from departing downward due to an alien defendant's stipulation to deportation. As the Court explained:

> [W]e must reject the government's argument that a district court may never consider granting a departure on the basis of an alien's stipulation to deportation unless the government has given its consent. To require governmental consent in all such instances runs contrary to both Ninth Circuit precedent and the plain language of U.S.S.G. §5k2.0, which affords the district court discretion to depart on the basis of factors not adequately taken into account by the Sentencing Commission.
> (Id., at 777-778)

Mr. Madrigal-Diaz's stipulation to deportation confers a benefit on the government. In the absence of stipulation, Mr. Madrigal-Diaz would be entitled certain procedural rights, such as the right to demand asylum hearing before an INS judge, a right to appeal the INS judge's decision to the Board of Immigration Appeals, and the right to seek review of the Board's decision before the Ninth Circuit Court of Appeals. Furthermore, in the event that the Ninth

Circuit Court denied Mr. Madrigal-Diaz's petition for review, he would be entitled to seek habeas relief in the United States District Court. This entire process can easily take several years, during which time the United States would be under the continuing obligation of paying Mr. Madrigal-Diaz's detention in INS custody. Moreover, Mr. Madrigal-Diaz would be permitted to avail himself of these processes and procedures as a matter of right, regardless of whether or not his substantive defense was considered frivolous. Thus, by giving up these rights, Mr. Madrigal-Diaz is saving the government both time and the cost of going through these lengthy proceedings.

<u>Rodriguez-Lopez</u> holds that, rather than issuing a blanket prohibition on downward departures based on stipulation to deportation, the court must evaluate each case on its individual facts and circumstances. In the instant case, Mr. Madrigal-Diaz's offense was that he illegally reentered the United States. He has accepted responsibility, expressed his regret and is prepared to stipulate to summary deportation.

  III.  THE COURT SHOULD SENTENCE MR. MADRIGAL-DIAZ TO A TERM BELOW THE GUIDELINE RANGE.

The imposition of U.S.S.G. §§2L1.2 (A) (ii) and (iii) increases Mr. Madrigal-Diaz's offense level from 6 to 22, and the guideline range from 9 to 15 months to 77 to 96 months. The large increase in the offense level and guideline

range in this case is unreasonable:

On 7/24/01 Mr. Madrigal-Diaz was awakened from his sleep, having recently returned from work at Mission Food and Tortillas. He was told that his wife was involved in an altercation. Upon leaving his home he was struck by Fernando Ruis in the head and face and knocked unconscious to the ground. Two independent witnesses confirmed this to the police. (Exhibit 2, Police Report, two pages, Tulare Co.)

The police interviewed Mr. Madrigal-Diaz and observed a black eye and a two inch gash on his face. He told the police that he had been hit with brass knuckles and knocked unconscious.

He further told the police that he did not remember what happened but that it was possible that he did shoot a gun. (Exhibit 3, Police report, two pages, Tulare Co. and Exhibit 4, Preliminary Hearing, Transcript, four pages, Tulare Co. )

After 194 days in custody, Mr. Madrigal-Diaz pled no contest to the felony, was sentenced to 350 days in county jail with 223 days credit for time served, and was released. (Exhibit 5, two pages, Judgment proceedings)

CONCLUSION

Mr. Madrigal-Diaz is very aware of the seriousness of his case before the Court. He also understands now that he can never return to the United States after he is deported. He respectfully requests that the Court consider the facts of his Tulare County crime as circumstances in mitigation and also depart downward on the grounds of cultural assimilation and downward on the grounds of summary deportation and sentence him to 51 months.

Thus, he will receive a substantial sentence and upon his release his daughters will still be children and possibly his mother will still be alive.

Date: December 3, 2007                                                  Respectfully submitted,


                                                                                     _____/s/_____
                                                                                     Jeffry Glenn
                                                                                     Attorney for Defendant,
JOSE JESUS MADRIGAL-DIAZ