1   SCOTT SCHOOLS (SCBN 9990)
    United States Attorney
2
    BRIAN STRETCH (CSBN 163973)
3   Chief, Criminal Division

4   DENISE MARIE BARTON (MABN 634052)
    Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102
        Telephone: (415) 436-7359
7       Facsimile: (415) 436-7234
        denise.barton@usdoj.gov
8

9                       UNITED STATES DISTRICT COURT

10                      NORTHERN DISTRICT OF CALIFORNIA

11                       SAN FRANCISCO DIVISION

12

13  UNITED STATES OF AMERICA,        )    NO.  07-0309 WHA
                                     )
14          Plaintiff,               )    **UNITED STATES' SENTENCING**
                                     )    **MEMORANDUM AND REPLY TO**
15  v.                               )    **SENTENCING MEMORANDUM OF**
                                     )    **DEFENDANT JOSE JESUS**
16  JOSE JESUS MADRIGAL-DIAZ,        )    **MADRIGAL-DIAZ**
                                     )
17          Defendant.               )    Sentencing
    _____ )    Date:      December 11, 2007
18                                        Time:      2:00 pm
                                          Courtroom: 19th Floor, Courtroom 9
19                                                   Hon. William H. Alsup

20          The defendant, Jose Jesus Madrigal-Diaz, has been deported or removed from the United

21  States seven times, first in December 1997 and thereafter once in 1998; twice in 1999; twice in

22  2001; and most recently, in August 2003.[1]   When he was present in the United States - whether

23  legally or illegally, the defendant was convicted of four felony offenses and four misdemeanor

24  offenses, including 1997 felony conviction for Illegal Re-Entry After Deportation and a 1999

25

26          [1] The United States recognizes that this Sentencing Memorandum and Reply are filed late and not in
    compliance with Local Crim. Rule 32-5(b).  The prosecutor apologizes to the Court and defendant for this late filing.
27  If the Court is not inclined to accept this late-filed Memorandum and Reply, the United States will present its
    arguments at the Sentencing Hearing in open Court.
28

    UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT JOSE JESUS MADRIGAL-DIAZ, CR 07-0309
    WHA

                                        -1-

1  misdemeanor conviction for Illegal Entry.  The circumstances of this case do not, as the
2  defendant contends, bring him out of the "heartland of cases" and warrant a downward departure
3  on any grounds.  Recognizing the defendant's failure to be deterred by his prior deportations or
4  his prior conviction for Illegal Reentry and Entry, as well as his criminal history and conduct in
5  transporting illegal aliens in the instant offense, the United Sates recommends that a high-end
6  sentence within the range of 92-96 months is "sufficient, but not greater than necessary" to effect
7  the purposes of sentencing.  See 18 U.S.C. § 3553(a).

8

9                          **PROCEDURAL HISTORY**

10        On September 25, 2007, six days before he was scheduled to proceed to trial, the
11  defendant Jose Jesus Madrigal-Diaz  pled guilty to Count I of the above-captioned indictment, a
12  violation of 8 U.S.C. § 1326, Illegal Re-Entry After Deportation.

13

14                              **ARGUMENT**

15        As the Court is well aware, the Sentencing Guidelines are no longer binding in the wake
16  of the Supreme Court's decision in *Booker*.  Rather, this Court is to consider the Guidelines
17  along with the other factors set forth in Title 18, United States Code, section 3553(a) to fashion a
18  sentence that is sufficient, but no harsher than necessary, to comply with the purposes of
19  sentencing.  As set forth in *United States v. Mix*, 457 F.3d 906, 911 (9th Cir. 2006), the District
20  Court must correctly analyze the Guidelines and then take into account the factors set forth in
21  section 3553.  Although the Guidelines are not binding, "it is fair to assume that the Guidelines,
22  insofar as practicable, reflect a rough approximation of sentences that might achieve section
23  3553(a)'s objectives." *United States v. Rita*, 127 S. Ct. 2456, 2464 (2007).  Analysis of the
24  Guidelines and the section 3553 factors in this case demonstrates that the 92-96 month sentence
25  range recommended by the Government is a reasonable and appropriate one in this case and for
26  this defendant.
27  //
28

UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT JOSE JESUS MADRIGAL-DIAZ, CR 07-0309
WHA

1

2     A.    Guidelines Range.

2          The United States agrees with the United States Probation Department that the adjusted

3     offense level for this defendant is 22; the Criminal History Category is V; and the resulting

4     sentence range under the Sentencing Guidelines is 77-96 months.   The 92-96 month sentencing

5     range recommended by the United States is a reasonable and appropriate disposition of the matter

6     and falls with the applicable Guidelines range.  The defendant is not entitled to any departure and

7     certainly not the 4-6 offense level departure he proposes.[2]  Although this Court is not bound to

8     impose a sentence within the Guidelines, the United States contends that a within-Guidelines

9     sentence is consistent with sentences imposed for similarly situated defendants; would prevent

10    disparity in sentencing that the Guidelines seek to prevent; and properly accounts for the

11    defendant's criminal conduct and the section 3553 factors.

12         B.    Nature and Circumstances of the Offense and the History and Characteristics of
             the Defendant.

14         On April 20, 2007, while effecting a traffic stop in Santa Rosa, California, Sonoma

15    County Sheriff's Department deputies encountered the defendant and several other Hispanic

16    males in a white cargo van.  *Presence Investigation Report*, ¶¶ 7-8.  When asked his identity

17    on the scene, the defendant identified himself as Santiago Torres-Peralez and gave the deputies a

18    Mexican ID card in that name.  *Id.*  at  ¶ 10.  Only after his fingerprints were submitted, were the

19    deputies able to determine that the defendant was not Santiago Torres-Peralez, but in fact, Jose

20    Jesus Madrigal-Diaz.  *Id.*  at  ¶ 21.  When questioned at the station, the defendant claimed that he

21    had never been deported from the United States.  *Id.*  at  ¶ 20.  However, the defendant's

22    immigration file reveals that this statement was also a lie - the defendant had been deported at

---

[2]  Without specifying the number of associated offense levels, the defendant contends that he is entitled to a downward departure and recommends a sentence of 51 months.  At the defendant's criminal history category of V, a 51 months sentence could fall within offense levels 16, 17, or 18.

UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT JOSE JESUS MADRIGAL-DIAZ, CR 07-0309 WHA

1  least six times. *Id.* at ¶ 21.[3]   The defendant also claimed that he was picked up by the van in

2  Portersville, California and that there were already five men in the van. *Id.* at ¶ 20.  This

3  statement was contradicted by the other passengers in the van.  The men in the van consistently

4  reported that they had been smuggled across the United States - Mexico border; taken to a house

5  in Phoenix, Arizona by a smuggler; picked up at the house in Phoenix, Arizona by the defendant

6  and another man; and driven to California by the defendant and the other man.  The men all

7  identified the defendant as one of the men who had picked them up in Arizona. *Id.* at ¶¶ 14- 19.

8          Notwithstanding the prior orders of deportation and convictions for same conduct to

9  which he now pleads guilty, the defendant continued to re-enter the United States and re-offend.

10  Without addressing each and every arrest and deportation, the following chronology

11  demonstrates that the defendant does not respect either the immigration or criminal laws of this

12  country.  After two state misdemeanor convictions and a felony conviction for Possession of

13  Narcotics, the defendant was deported to Mexico on December 3, 1997.  Within two weeks, the

14  defendant returned to the United States, in violation of the deportation order, and on or about

15  December 18, 1997, was convicted of Illegal Reentry After Deportation.  After serving 60 days

16  for Illegal Reentry, the defendant was again deported.  Undeterred by his two prior deportations,

17  the defendant again returned to the United States.  Following this illegal reentry, the defendant

18  was arrested in California and convicted of Providing False Identification to a Peace Officer after

19  which he was again deported.  In December 1999, the defendant was convicted for illegally

20  entering the United States.  He was sentenced to 4 months jail and was thereafter deported.  In

21  2001, the defendant was again arrested and charged with numerous offenses, including Taking a

22  Vehicle Without Consent, Carrying a Loaded Firearm, and Use of False Documents.  In

23  connection with the 2001 arrest, like in the arrest that gave rise to the instant case, the defendant

24  falsely identified himself to a police officer.  In connection with that arrest, the defendant was

25

26          [3]  The United States contends, and would have proven at trial, that the defendant has been deported or
27  removed from the United States seven times.  The Presentence Investigation Report notes six deportations and
    removals.  For purposes of sentencing, whether the defendant had been deported and removed six or seven times is
28  not material.

UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT JOSE JESUS MADRIGAL-DIAZ, CR 07-0309
WHA

1   convicted of Taking a Vehicle Without Consent.  In 2002, the defendant was convicted of

2   Assault With a Deadly Weapon (Firearm) and By Force Likely To Produce Great Bodily Injury

3   and Possession of a Firearm.  That offense involved an altercation with neighbors over a child's

4   bike during which the defendant fired a gun at his neighbor until it was empty and then fled the

5   scene.

6        The defendant now claims that "honestly and truly I didn't know the consequences of this

7   crime."  *Exhibit 1 to Defendant's Sentencing Memorandum*.  This statement is belied by the

8   defendant's prior history.  Clearly, the defendant knew the consequences of his actions.  He has

9   twice before been convicted for this same conduct and served jail time.  Further, when arrested

10  by the Sonoma County authorities, the defendant gave a false name and claimed to have never

11  been deported from the United States.  His efforts to conceal his identity and immigration history

12  were likely due to his knowledge that he would be subject to further federal prosecution with

13  increased penalties if it was known that he was a previously deported alien.

14       In recommending a 92-96 month sentence, the United States has taken into consideration

15  the nature and circumstances of this offense and history and characteristics of the defendant as is

16  contemplated in section 3553(a)(1).  Defendant's criminal history portrays a recidivist offender

17  with a propensity for violence and firearms.  In sentencing this defendant, the Court should

18  consider that this defendant has repeatedly violated administrative and court orders and been

19  undeterred to date to comply with either immigration laws or criminal laws governing aliens.  In

20  addition, when found by Immigration and Customs Enforcement, the defendant was believed to

21  be smuggling other illegal aliens into California and lied about his identity and immigration

22  history.

23       C.    The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote
              Respect for the Law, and to Provide Just Punishment.
24

25       As set forth in 18 U.S.C. § 3553(a)(2)(A), the Court must also consider the need for the

26  sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide

27  just punishment.  As noted above, the Defendant's actions demonstrate a repeated lack of respect

28

UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT JOSE JESUS MADRIGAL-DIAZ, CR 07-0309
WHA

1  for the law, as shown by his continued re-entries into the United States after deportation and

2  commission of federal and state offenses.  For these reasons and those set forth above, a sentence

3  of 92-96 months reflects the seriousness of the offense, the Defendant's apparent lack of respect

4  for the law, and represents just punishment for this offense.

5         D.    <u>The Need To Afford Adequate Deterrence to Criminal Conduct</u>.

6         Section 3553(a)(2)(B) requires this Court to take into account the need to provide

7  adequate deterrence to criminal conduct.  Notwithstanding his prior deportation and convictions,

8  the defendant was not deterred from criminal behavior.  It is hoped that a sentence of 92-96

9  months will be significant to the Defendant and sufficient, but not greater than necessary, to

10  impress upon the Defendant that continuing to re-enter this country in violation of deportation

11  orders will lead to nothing but further imprisonment, with even longer sentences in the future.

12         E.    <u>The Need to Protect the Public From Further Crimes of the Defendant</u>.

13         Under section 3553(a)(2)(C), this Court should fashion a sentence that takes into account

14  the need to protect the public from further crimes.  The defendant has a criminal history

15  involving narcotics,  theft, and violence.  Notwithstanding his prior periods of incarceration, the

16  defendant has continued to re-offend, most recently shooting a neighbor following a petty

17  altercation.   The United States submits that a sentence of 92-96 months will protect the public

18  from further criminal conduct by the Defendant and will convince the Defendant that continuing

19  to commit crimes in the future, after release from incarceration, is not a viable life choice.

20         F.    <u>A Downward Departure Is Not Appropriate In This Case</u>.

21         The defendant seeks a downward departure on three equally unsupported and

22  inappropriate grounds - cultural assimilation; a willingness to stipulate to summary deportation

23  following his incarceration; and an apparent belief that the well-established Specific Offense

24  Conduct enhancement of 16 points under section 2L1.2(b)(1)(A) of the Guidelines is

25  unreasonable.  While recognizing that this Court has the authority to depart downward, the

26  United States submits that a departure is not appropriate in this case on either legal or factual

27  grounds.

28

UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT JOSE JESUS MADRIGAL-DIAZ, CR 07-0309
WHA

1           1.    *A Departure For Cultural Assimilation Is Not Legally or Factually*

2           *Appropriate.*

3           Although cultural assimilation has been recognized as a proper basis for a court to grant a

4    downward departure, a departure on this ground is reserved for extraordinary cases. This is not

5    an extraordinary case. The defendant is an man, who like many other aliens, entered the United

6    States to make a better life. However, after entering, the defendant was deported.

7    Notwithstanding the fact that was deported and removed on numerous occasions, the defendant

8    continued to reenter and live in the United States during which time he developed economic and

9    social ties to the United States. The defendant cannot now rely on the economic and social ties

10    he developed while he was in the country illegally to serve as a basis for a downward departure.

11           In <u>United States v. Lipman</u>, the case relied by the defendant, the Court stated that a

12    sentencing court may depart on the ground of cultural assimilation if, "it finds that the

13    defendant's circumstances remove his case from the heartland of cases governed by the relevant

14    individual guidelines." 133 F.3d 726, 731 (9th Cir. 1997). The court also held that departures

15    based on this ground, and others "not mentioned in the Guidelines will be highly infrequent." <u>Id.</u>

16    at 730. More recently, the Ninth Circuit has held that a departure on the grounds of "cultural

17    assimilation" should be reserved for

18          persons brought to the United States as children, who had adapted to American
      culture in a strong way and who, after deportation, returned to the United States

19          <u>for cultural rather than economic reasons</u>.

20    <u>United States v. Rivas-Gonzalez</u>, 384 F.3d 1034, 1044 (9th Cir. 2004) (emphasis added).

21           In <u>Lipman</u> and <u>Rivas-Gonzalez</u>, the district courts declined to depart on the grounds of

22    cultural assimilation and the Ninth Circuit upheld that determination. <u>Lipman</u>, 133 F.3d at 731;

23    <u>Rivas-Gonzalez</u>, 384 F.3d at 1045. In <u>Lipman</u>, the defendant was brought to the United States by

24    his mother at age twelve; had married a United States citizen; had United States born children;

25    and had resided in the United States uninterrupted for 23 years until his deportation. Lipman

26    claimed that his reentry was motivated by family, not economic desires, specifically his desire to

27    visit his disabled daughter who had been sexually assaulted.. <u>Lipman</u>, 133 F.3d at 729. The

28

UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT JOSE JESUS MADRIGAL-DIAZ, CR 07-0309
WHA

1   Court held that notwithstanding the defendant's long-term residency and his significant family

2   ties in the United States, there were not sufficient facts to warrant a downward departure.  Id. at

3   731.

4           In Rivas-Gonzalez, the Ninth Circuit reversed the district court's downward departure for

5   cultural assimilation.  The Court held that the district court had impermissibly expanded the

6   scope of a departure for cultural assimilation to apply to a person who had simply entered the

7   United States to secure a better standard of living:

8           Like other undocumented immigrants who may evade our law enforcement for
            years, Rivas, after his illegal entry, may have developed social, economic, and
9           cultural ties to the United States.  However, this inevitable fact cannot alone
            justify a downward departure for cultural assimilation.
10

11   Rivas-Gonzalez, 384 F.3d at 1044-45.  Rivas first came to the United States from Mexico as a

12   twenty one year old.  After he was deported and thereafter returned to the United States, Rivas

13   married a United States citizen and had United States born children.  Id. at 1041-42, 1044-45.

14   The Ninth Circuit noted that "we do not think the cultural assimilation ground for departure can

15   be properly stretched to cover cases ... where the asserted cultural assimilation arises primarily

16   after the illegal entry."  Id. at 1045.

17          Under either Lipman or Rivas- Gonzalez, the defendant is not entitled to a downward

18   departure for cultural assimilation.  This defendant, by his own admission, seeks to return for

19   economic, not cultural reasons.  "I came to the United States to make a better living for myself

20   and my family."  *Exhibit 1 to Defendant's Sentencing Memorandum*.  Even if the defendant did

21   return to the United States based on family ties and cultural assimilation, the time in which the

22   defendant purportedly "assimilated" includes the time after which he was first deported from the

23   United States, which is not permitted under Rivas-Gonzalez.  See Rivas-Gonzalez, 384 F.3d at

24   1045.  Finally, the facts the defendant presents in support of this position are even less

25   compelling than those articulated by the defendants in Lipman and Rivas-Gonzalez, both of

26   which the courts ruled could not avail themselves of this basis for departure.  Unlike the

27   defendant in Lipman, the defendant was raised in Mexico and lived there continuously until he

28

1  was fourteen years old. *Presentence Investigation Report*, ¶ ¶ 56-57.   From 2003 to 2007, the

2  defendant lived in Mexico, away from his significant other and children and was able to secure

3  employment. Id. at ¶ 68.   The defendant's mother and four siblings still live in Mexico.   Id. at ¶

4  56. Further, like the defendant in Rivas-Gonzalez, the defendant's purported assimilation

5  occurred primarily after he was already deported and illegally present in the United States.  The

6  defendant was first deported in 1997, at age 24.  According to the defendant, at age 27, he and his

7  significant other moved to California and had two children.  Id. at ¶ 59.  None of the factors cited

8  by the defendant warrant a downward departure on the grounds of cultural assimilation.

9          2.      *The Potential of a Prolonged and Frivolous Appeal Should Not Be the*

10                 *Basis For a Downward Departure.*

11          This Court should not credit the defendant's "threat" to prolong his deportation process

12  by granting him a downward departure in exchange for a stipulation to summary deportation.

13  The defendant's willingness to stipulate to deportation does "take the case out of the Guideline's

14  heartland" and warrant a downward departure.  United States v. Rodriguez-Lopez, 198 F.3d 773,

15  776 (9th Cir. 1999).  The defendant speculates, without support, that he would be able to sustain a

16  prolonged period of appeals and that without his stipulation to summary deportation, the process

17  will be at significant expense to the United States.  The defendant has been previously deported

18  and removed on numerous occasions.  Whether Immigration and Customs Enforcement chooses,

19  after the defendant serves his period of incarceration, to proceed with a full deportation hearing

20  or simply reinstate a prior order of deportation will be the decision of that agency at the

21  appropriate time.  This court should not permit the specter of frivolous administrative

22  immigration appeals to be the basis for a downward departure.

23          3.      *The Defendant Offers No Support for His Position that a 16 Point*

24                 *Enhancement Is "Unreasonable"*

25          In support of his sentencing recommendation the defendant claims that "the large increase

26  in the offense level [due to the 16 point enhancement under U.S.S.G. § 2L1.2(A)] and guideline

27  range in this case is unreasonable." *Defendant's Sentencing Memorandum*, pp. 6-7.  Due to the

28

UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT JOSE JESUS MADRIGAL-DIAZ, CR 07-0309
WHA

1  absence of any legal citations in support of his position, the United States understands the

2  defendant's argument to be based on the factual circumstances of the crime underlying this

3  enhancement.

4      Under Section 2L1.2(A) of the Sentencing Guidelines, a 16 point enhancement applies if

5  "the defendant previously was deported, or unlawfully remained in the United States, after – (A)

6  a conviction for a felony that is . . . (ii) a crime of violence." A crime of violence is defined as an

7  "offense under federal, state, or local law that has as an element the use, attempted use, or

8  threatened use of physical force against the person of another." U.S.S.G. § 2L1.2, Application

9  Notes 1(B)(iii). Incredulously, the defendant endeavors to convince this court that his Assault

10 with a Firearm was not a crime of violence that warrants this enhancement.

11      On November 7, 2002, the defendant pled guilty to Assault With a Deadly Weapon and

12 By Force Likely to Produce Great Bodily Injury. The circumstances of that conviction most

13 certainly are a "crime of violence." The defendant repeatedly shot his neighbor. *Presentence*

14 *Investigation Report,* ¶ 47*; Exhibits 2 and 3 to Defendant's Sentencing Memorandum.* Whether

15 the defendant was injury in an altercation preceding the shooting is irrelevant. The defendant

16 was convicted of firing a loaded weapon multiple times and then running from the scene. In his

17 Memo, the defendant does not contend that this conviction is not for a crime of violence but

18 //

19 //

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27

28

UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT JOSE JESUS MADRIGAL-DIAZ, CR 07-0309 WHA

1    apparently seeks to minimize the seriousness of the events.  This Court should apply the

2    applicable 16 point enhancement for what is unquestionably a "crime of violence."

3

4                                                **CONCLUSION**

5          The Guidelines range and the sentencing factors under § 3553(a) support the

6    recommendation of the Government.  The defendant has not articulated any grounds, legal or

7    factual, that warrant a downward departure from a Guideline range sentence.  Defendant

8    repeatedly chose to re-enter the United States notwithstanding deportation orders and each time,

9    upon re-entry, engaged in new criminal conduct.  A 92-96 month Guideline range sentence

10   should be sufficient to provide just punishment and demonstrate to the Defendant that engaging

11   in similar repeated criminal behavior, including re-entry into the United States, in the future will

12   only lead to more unpleasant consequences.

13

14   DATED: December 9, 2007                    Respectfully submitted,

15                                              SCOTT SCHOOLS
                                                United States Attorney
16

17                                             _____
                                                         /s/
18                                              DENISE MARIE BARTON
                                                Assistant United States Attorney

19

20

21

22

23

24

25

26

27

28

UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT JOSE JESUS MADRIGAL-DIAZ, CR 07-0309
WHA
                                            -11-